UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK JOHNSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No.　2:19-cv-02001-JDP (SS)<br><br>ORDER DENYING CLAIMANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF No. 15<br><br>ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>ECF No. 18 |

　　　　Johnson ("claimant") challenges the final decision of the Commissioner of Social Security denying his application for Title II disability benefits. ECF No. 1. The case is submitted on claimant's motion for summary judgment, ECF No. 15, to which the Commissioner filed an opposition and cross-motion for summary judgment, ECF No. 18. The matter is ripe for review, and this court now denies claimant's motion for summary judgment and grants the Commissioner's cross-motion for summary judgment.[1]

**I.　　STANDARD OF REVIEW**

　　　　The court's review is limited. On appeal, I ask only whether substantial evidence supports the factual findings of the administrative law judge ("ALJ") and whether the ALJ applied the

---

[1] Both parties have consented to magistrate judge jurisdiction. ECF Nos. 6, 8.

1

correct legal standards. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); 42 U.S.C. § 405(g). As such, I apply a deferential standard of review and will uphold the ALJ's decision if a reasonable person could find the evidence sufficient to support the ALJ's findings. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) ("'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion."). I will uphold the ALJ's decision if it is rational, even if there is another rational interpretation of the evidence, because the court may not substitute its own judgment for that of the ALJ. *See Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).

A motion for summary judgment may be granted only when the there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The burden of establishing that there is no genuine issue of material fact lies with the moving party. *See Celotex Corp v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party has met that burden by "presenting evidence which, if uncontradicted, would entitle it to a directed verdict at trial, [Fed. R. Civ. P. 56(e)(2)] shifts to [the nonmoving party] the burden of presenting specific facts showing that such contradiction is possible." *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 950-52 (9th Cir. 1978).

**II.    BACKGROUND**

Claimant applied for disability insurance benefits on May 2, 2017, alleging disability since May 12, 2012. In his disability report, he indicated that his disability resulted from a hip replacement, post-traumatic stress disorder ("PTSD"), and high blood pressure. AR 188-96. Claimant reported that he worked as a cheesemaker before he "decided to take his retirement." AR 190-91. At the time of filing for disability, he reported that he received medication only for his high blood pressure, but he later began receiving medication for depression and prostate issues as well. AR 192, 286. When filing, claimant also reported that he suffered from: anxiety, blurry vision, depression, difficulties with social functioning, emotional withdrawal and/or isolation, difficulty concentrating, memory loss, and shortness of breath. AR 196.

Claimant's application was denied both initially and upon reconsideration, after which he

requested a hearing before an ALJ.  AR 75, 91, 107-08.  The ALJ held a hearing on August 6, 2018, and issued a decision finding that claimant was not disabled on October 9, 2018.  AR 19-30.  Claimant requested a review of the ALJ's decision, which was denied by the Appeals Council.  AR 1-7, 169-70.  Claimant now seeks judicial review under 42 U.S.C. § 405(g).

**III.    ANALYSIS**

An ALJ determines eligibility for Social Security benefits in a five-step sequential evaluation process, asking: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether any of the claimant's impairments meet or medically equal the severity of one of the impairments listed in the regulations; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform other specified types of work.  *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018); 20 C.F.R. § 416.920.  The burden of proof is on the claimant during the first four steps of the inquiry but shifts to the Commissioner at the fifth step.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f)*; Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

At step one, the ALJ found that claimant had not engaged in substantial gainful activity since his alleged disability onset date of May 12, 2012.  AR 21.  At step two, the ALJ found that claimant had the severe impairments of depressive disorder, PTSD, "status post right-hip arthroscopy with residual symptoms," and obesity.  AR 21.  At step three, the ALJ found that claimant did not have an impairment or combination of impairments that met or functionally equaled the severity of the listed impairments.  AR 21.  As part of the step-three determination, the ALJ found that claimant had "no more than moderate" limitations in the four relevant areas of mental functioning, laid out in the regulations as paragraph B criteria: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself.  AR 22-23; *see* 20 C.F.R. Pt. 404, Subp. P, App'x 1.  The ALJ further found that there was "no evidence" that claimant had demonstrated paragraph C criteria, which are satisfied when a claimant experiences only limited improvements despite ongoing treatment.  *See* AR 23.  Before proceeding to step four, the ALJ determined that

claimant's RFC permitted him to perform medium work as defined by 20 C.F.R. § 404.1567(c), so long as the work met a lengthy list of physical and mental limitations.[2]  *See* AR 23-28.  At step four, the ALJ found that claimant was unable to perform any past relevant work.  AR 28.  At step five, the ALJ found that claimant could perform jobs that exist in significant numbers in the national economy.  AR 29.  Therefore, the ALJ determined that claimant was not disabled.  AR 30.

In his motion for summary judgment, claimant argues that: (1) the ALJ improperly rejected the opinion of his treating psychiatrist, Dr. Smith; (2) the ALJ erred in finding that claimant had not shown that his impairments met or medically equaled a listed impairment; (3) the ALJ improperly discredited the testimony of claimant and his friend, Ms. Hoppe; and (4) the ALJ improperly ignored the opinion of his licensed clinical social worker, Ms. Paoli.  *See* ECF No. 15 at 8-17.  In the Commissioner's opposition and cross-motion, the Commissioner argues that: (1) the ALJ properly considered Dr. Smith's questionnaire responses under the revised Social Security regulations; (2) claimant did not meet or equal a listed impairment at step three; (3) the ALJ properly evaluated the testimony of claimant and Ms. Hoppe; and (4) the ALJ did not err in choosing not to discuss Ms. Paoli's letter, but if he did it was harmless.  *See* ECF No. 18 at 22-39.

**A.  Dr. Smith**

Claimant argues that the ALJ improperly rejected portions of Dr. Smith's opinion.  *See* ECF No. 15 at 8-12.  Since claimant filed for disability after March 27, 2017, the SSA's revised regulations governing the evaluation of medical opinion evidence apply.  *See* 20 C.F.R.

---

[2] As listed in the RFC: "He was limited to occasional postural activities, including balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs, but is precluded from climbing ladders, ropes, and scaffolds.  He was limited to understanding, remembering, and carrying out simple instructions and making simple work-related decisions.  He could tolerate a low level of work pressure, defined as work involving no multitasking or detailed job tasks.  He could work at a consistent pace, but not at a production rate pace, where each tasks must be performed within a strict time deadline, such as meeting a quick turnaround with no tolerance for discrepancies.  He was limited to occasional contact with coworkers and occasional interaction with the public, but could otherwise respond appropriately to criticism from supervisors.  He was precluded from exposure to hazards, including dangerous moving machinery and unprotected heights, and could not operate motor vehicles."  AR 23.

1   §§ 404.1520c, 416.920c.  Under the updated regulations, medical opinion evidence must be

2   evaluated based on supportability, consistency, the medical source's relationship with the

3   claimant, the medical source's specialization, and other factors.[3]  20 C.F.R. § 404.1520c(c)(1-5).

4   Among these factors, supportability and consistency have primacy.  20 C.F.R. § 404.1520c(a).

5          In response to a questionnaire, Dr. Smith opined that claimant's "[s]ymptoms will

6   interfere with the patient's ability to retain employment."  AR 319.  As for the four relevant areas

7   of mental functioning, Dr. Smith opined that claimant had "moderate" limitations in three

8   domains.  AR 319-20.  Dr. Smith opined that claimant was likely to decompensate in response to

9   increased mental demands and would miss work more than four times a month as a result of his

10  impairments.  *See id.*  The ALJ agreed with Dr. Smith that claimant experienced "no more than

11  moderate limitations in mental functioning," but disagreed with Dr. Smith's opinions about the

12  likelihood of claimant's decompensation and missed work.  AR 27.  As reasons for rejecting these

13  two specific portions of Dr. Smith's opinion, the ALJ cited the evidence that claimant's medical

14  regimen was generally effective, that there was "no evidence of psychiatric hospitalization that

15  would suggest" decompensation or missed work, and that claimant could handle funds

16  independently.  *See* AR 27.  As such, the ALJ cited both a lack of supportability and consistency

17  in rejecting these two portions of Dr. Smith's opinion.  *See* AR 27; 20 C.F.R. § 404.1520c(a).

18         Claimant argues that the decision failed to consider the source of his PTSD, his mental

19  hospitalization in 2011 (before the alleged onset of his disability), his participation in intensive

20  outpatient treatment, and his therapeutic history.  *See* ECF No. 15 at 8-9.  As to the specific

21  portions of Dr. Smith's opinion that the ALJ rejected, claimant argues that the "decision is *wrong*

---

[3] Under prior regulations, the weight given to medical opinions depended largely on whether the opinions were proffered by treating, examining, or non-examining professionals. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); 20 C.F.R. § 404.1527(c)(2)(ii) ("When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source."). Generally, under the prior regime, an ALJ accorded controlling weight to a treating doctor, where the doctor utilized medically approved diagnostic techniques to support the offered opinion, and where the opinion was not inconsistent with other substantial evidence. *See* 20 C.F.R. § 404.1527(d)(2); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).  Under the new regulations, a treating source is not entitled to the same presumptions, particularly where another medical opinion is more consistent with or better supported by record evidence. 20 C.F.R. § 404.1520c(c)(a).

1   about there being no evidence of psychiatric hospitalization, and wrong within the claim period
2   insofar as there was intensive outpatient treatment." ECF No. 15 at 10.
3       Claimant mischaracterizes the decision.  The ALJ did not necessarily overlook claimant's
4   prior hospitalization in 2011—which preceded the alleged disability onset date—but rather
5   appears to have concluded that it did not suggest decompensation or a need to miss work in the
6   future.  *See* AR 27.  Since claimant's single hospitalization occurred in 2011, the lack of further
7   hospitalizations supports the ALJ's conclusion.  Claimant further argues that the efficacy of
8   medication does not undermine the severity of his underlying condition and, as such, does not
9   undermine Dr. Smith's opinion.  *See* ECF No. 15 at 10.  Again, I disagree.  The ALJ cannot be
10  said to have erred in finding that evidence that claimant responded well to antidepressant
11  treatment renders less persuasive Dr. Smith's opinion that he would decompensate and miss
12  work.  *See* AR 27.  Therefore, under the applicable regulations, the ALJ did not err in dismissing
13  portions of Dr. Smith's medical opinion due to a lack of supportability and consistency.  *See* AR
14  27; 20 C.F.R. § 404.1520c(a).

15  **B.  Paragraph C Criteria**

16      Claimant argues that the ALJ failed to consider evidence showing that claimant's
17  impairment satisfied the paragraph C criteria and thereby met or medically equaled a listed
18  impairment.  *See* ECF No. 15 at 8-10; ECF No. 21 at 6-7.  The regulations' "Listing of
19  Impairments" identifies impairments in fifteen categories of body systems that are considered
20  severe enough to preclude employment.  *See Young v. Sullivan*, 911 F.2d 180, 183-84 (9th Cir.
21  1990); 20 C.F.R. § 404.1520(d).  If the requirements of a condition's listing are met, then a
22  claimant has established disability at step three.  *See* 20 C.F.R. § 404.1520(d).  Thus, if a claimant
23  meets the criteria for a listing, the ALJ need not determine the claimant's RFC and does not
24  proceed to steps four and five.  *See id.*
25      To demonstrate a mental disorder that meets or medically equals the listed impairments, a
26  claimant must provide medical evidence of paragraph A criteria—essentially demonstrating that
27  the claimant's mental impairments are severe—and sufficient proof of either paragraph B or
28  paragraph C criteria.  *See* 20 C.F.R. Pt. 404, Subp. P, App'x 1.  Demonstrating the paragraph C

criteria requires proof that: (1) the claimant relied on ongoing medical treatment, mental health therapy, psychosocial support, or a highly structured setting; and (2) despite the treatment leading to diminished symptoms, the claimant's "adaptation to the requirements of daily life is fragile; that is, [the claimant has] minimal capacity to adapt to changes in [his] environment or to demands that are not already part of [his] life." *Id.* at §§ 12.04(C)(1)-(2), 12.15(C)(1)-(2).

The ALJ found "no evidence" that claimant had satisfied the paragraph C criteria. AR 23. Claimant disagrees, arguing that the record did contain such evidence and citing Dr. Smith's opinion as an example. *See* ECF No. 15 at 8-10. Claimant argues that the ALJ did not even consider Dr. Smith's opinion regarding the C criteria, and in support claimant cites the manner in which the ALJ structured his analysis of Dr. Smith's opinion. *See* ECF No. 15 at 10. I find claimant's argument unpersuasive. The ALJ considered Dr. Smith's opinion when evaluating, in a single section, the paragraph B and C criteria. AR 21-23. I see no flaw in such organization. Claimant fails to demonstrate that the ALJ's findings were not supported by substantial evidence in the record. *See Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled.").

Throughout his decision, the ALJ cited specific and substantial evidence in the record that supported the conclusion that claimant responded well to treatment. The ALJ noted that claimant met friends for dinner and regularly attended both church and twelve-step meetings. AR 22. The ALJ cited claimant's daily activities: independently providing for his personal care, preparing his own meals, going out alone daily, driving, and grocery shopping. *See* AR 24. The ALJ further noted that claimant did not receive "significant treatment" and that the evidence supported that he had "a good response to antidepressant medication." AR 25. Therefore, the ALJ cited specific and substantial evidence in the record that supported his conclusion that claimant did not satisfy paragraph C criteria.

**C. Claimant's Testimony**

Claimant takes issue with the ALJ's use of boilerplate language in finding that "claimant's

7

statements concerning the intensity, persistence and limiting effects of [his alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 24. In particular, claimant argues that the ALJ failed to explain which particular symptom allegations were being discredited and failed to provide clear and convincing reasons for discrediting them. *See* ECF No. 15 at 16.

Unless an ALJ finds that a claimant is malingering or has failed to provide objective medical evidence in support of his testimony, an ALJ must provide clear and convincing reasons for rejecting a claimant's subjective testimony about the severity of experienced symptoms. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015). As such, a claimant's subjective testimony may only be rejected when an ALJ specifically identifies the "the testimony [from a claimant] she or he finds not to be credible and . . . explain[s] what evidence undermines that testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Factors that may be considered in assessing a claimant's subjective symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). In assessing the claimant's credibility, the ALJ may also consider: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks and citations omitted).

In his function report, claimant reported that he could not focus on a task for more than 30 minutes at a time, maintain his memory, "figure out what he's doing over and over," or maintain mental energy for more than two hours. AR 200. He reported that he had "nightmares and high anxiety at nighttime" and that he forgot to eat unless reminded. AR 201. Claimant further reported that he averaged two hours per day spent outside and that he did not go out more due to

1  anxiety, depression, and a lack of energy. *See* AR 203. Claimant reported that he had not talked
2  to his two sons in years, that his mother had mental illness, and his father died of alcoholism;
3  overall, he reported avoiding other people because he had a hard time with conflicts. *See*
4  AR 205. In his testimony, claimant stated that he could not walk more than a block at a time and
5  that he could not leave the home about three days per week due to the severity of his mental
6  health symptoms. AR 42, 53-54. Overall, he reported symptoms that were substantially more
7  disabling than what was reflected in the notes of treating and consultative doctors. *See, e.g.*,
8  AR 318 (concluding, from the perspective of consultative examiner Dr. Schwartz, that claimant
9  could stand or walk for up to six hours).
10      The ALJ rejected claimant's testimony about the severity of his symptoms as inconsistent
11 with other evidence. AR 24. The ALJ specifically cited examination findings, conservative but
12 effective treatment, substantial periods without any treatment, and inconsistent daily activities.
13 AR 24-26. The ALJ accounted for claimant's allegations of more severely disabling impairments
14 during his consideration of paragraph B criteria and in determining claimant's RFC, but he
15 balanced claimant's claims against the inconsistent medical evidence. AR 21-28. In sum, the
16 ALJ provided clear and convincing reasons for rejecting claimant's subjective symptom
17 testimony. Hence, the ALJ properly rejected claimant's testimony about the severity of his
18 symptoms. *See Lingenfelter*, 504 F.3d at 1040.
19      **D. Ms. Hoppe's Statements**
20      Claimant further alleges that the ALJ erred by rejecting Ms. Hoppe's statements, which
21 largely mirrored claimant's own testimony. *See* ECF No. 15 at 14-15. "An ALJ need only give
22 germane reasons for discrediting the testimony of lay witnesses." *Bayliss v. Barnhart*, 427 F.3d
23 1211, 1218 (9th Cir. 2005). Inconsistency with medical evidence is a germane reason for
24 discounting lay testimony. *See id.* In her third-party function report, Ms. Hoppe reported that she
25 interacted with claimant two times per week through twelve-step recovery activities. AR 243.
26 Based on the source of her knowledge of claimant, Ms. Hoppe's full evaluation appears to have
27 relied on claimant's self-reports, with very little information stemming from direct observations
28 of his life outside of meetings. *See* AR 243-50. The ALJ found Ms. Hoppe's statements "not

persuasive" since they lacked consistency and support.  AR 26.  In support of this finding, the ALJ cited "clinical examination findings, mental status examination findings, compliance with and effectiveness of treatment, and reported activities."  AR 26.  At other points in the decision, the ALJ discussed each of these sources of contradictory evidence in greater detail.  *See* AR 21-28.  Therefore, substantial evidence supports the germane reasons offered by the ALJ for rejecting Ms. Hoppe's testimony.

### E.  Ms. Paoli's Letter

Claimant alleges that the ALJ erred by failing to discuss the opinion of Ms. Paoli, LCSW.  *See* ECF No. 15 at 13-14.  In her submitted letter, Ms. Paoli reported that she had not seen claimant in the four years preceding his application for disability benefits.  *See* AR 301.  Until the termination of his treatment, Ms. Paoli reported that she had treated claimant for nine years.  AR 301.  Her diagnoses for claimant were: major depressive disorder, recurrent, moderate; PTSD, chronic; and impulse disorder, not otherwise specified.  AR 301.  She described the sexual abuse that he endured as a child, which resulted in trauma that impaired his adult relationships and ability to function.  AR 302.  In her meeting with claimant, Ms. Paoli advised him to seek out anti-depressant medication, which he had received in the past.  AR 303.  They discussed Ms. Paoli writing a letter as part of his disability application.  AR 303.

An ALJ must normally discuss all significant and probative evidence.  *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).  However, where an ALJ has failed to discuss lay witness testimony that was neither significant nor probative in the context of the record as a whole, there is no error.  *See, e.g.*, *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (holding that only significant, probative evidence needs to be discussed); *Malveaux v. Comm'r, Soc. Sec.*, No. 2:18-CV-1952-DMC, 2020 WL 5820609, at *9 (E.D. Cal. Sept. 30, 2020) (holding that the ALJ did not err in failing to discuss testimony that was contradicted by the claimant's daily activities, his course of treatment, his work history, and medical opinion evidence); *Perea v. Comm'r, Soc. Sec.*, No. CIV S-10-2237-CMK, 2012 WL 1131527, at *11 (E.D. Cal. Mar. 30, 2012), aff'd, 574 F. App'x 771 (9th Cir. 2014) (holding that when opinion evidence is "controverted, then the ALJ does not err by ignoring it").

Ms. Paoli's letter was not significant or probative, particularly since the few portions relating to claimant's symptoms were contradicted by other evidence in the record. As the Commissioner argues, some of the statements in Ms. Paoli's letter were considered implicitly through the ALJ's consideration of the consultative doctors' evaluation of the letter. *See* ECF No. 18 at 39. In particular, Dr. Brode considered aspects of Ms. Paoli's letter, notably Ms. Paoli's assertion that claimant had "ongoing rage issues." *See* AR 69. In rejecting this assertion, Dr. Brode contrasted it with other evidence in the record, particularly the mental status examination findings and his response to the medication. AR 69. The ALJ considered and agreed with Dr. Brode's conclusions about claimant's social functions. AR 29. The ALJ also considered and rejected claimant's own statements that mirrored the opinions in Ms. Paoli's letter. *See Jones v. Comm'r, Soc. Sec.*, No. 1:19-CV-01049-SAB, 2021 WL 394773, at *19 (E.D. Cal. Feb. 4, 2021) ("Where the ALJ gives reasons for rejecting the claimant's testimony that are equally relevant to similar testimony provided by lay witnesses, that would support a finding that the lay witness testimony is similarly not credible."). In particular, the ALJ considered claimant's statements about his difficulty getting along with others and his avoidance of conflicts. AR 22, 24, 205. The ALJ contrasted claimant's statements with other statements in the record, in which claimant was "routinely described as polite and cooperative." AR 22. Insofar as the ALJ failed to address Ms. Paoli's statements about claimant's difficulties with social interactions, those claims were rejected elsewhere. *See* AR 22-25.

Additionally, since she did not treat claimant during four years of his then five-year period of alleged disability, Ms. Paoli's letter provides little information relevant to the time period at issue. *See* AR 301. The majority of her discussed treatment preceded the onset of claimant's disability. *See* AR 301. She did not provide treatment notes, except the two pages regarding her single meeting with claimant after his filing for disability. *See* AR 303-04. Ms. Paoli's statements about claimant's lack of improvements—based on a single interaction occurring after four years during which claimant went without treatment or medication—do not undermine the ALJ's reasoning about how claimant improved when he began antidepressants again. *See* AR 23-27, 301-02.

Therefore, because it was contradicted by other evidence in the record that was discussed by the ALJ, Ms. Paoli's opinion was not significant or probative and the ALJ did not err by choosing not to discuss it.

### IV. CONCLUSION AND ORDER

For the reasons stated in this opinion, the court affirms the decision of the Commissioner of Social Security. The court hereby orders that:

1. claimant's motion for summary judgment, ECF No. 15, be denied;
2. the Commissioner's cross-motion for summary judgment, ECF No. 18, be granted;
3. the decision of the Commissioner of Social Security be affirmed; and
4. the clerk of this court enter judgment in favor of defendant Commissioner of Social Security and against claimant, Mark Johnson, and close this case.

IT IS SO ORDERED.

Dated:  March 22, 2021

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE